# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

*In re:*

MALESE 18 CORP.,

                Debtor.

---------------------------------------------------------X

RM 18 CORP.,

                Appellant,

-against-

AZTEX ASSOCIATES, L.P. and THE BANK OF NEW YORK MELLON TRUST, N.A., as TRUSTEE,

                Appellees.

---------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
09-cv-2412 (ADS)

On Appeal From:

United States Bankruptcy Court
Eastern District of New York
Ch. 11 Case No. 02-80586 (DTE)

**APPEARANCES:**

**Ruskin, Moscou & Faltischek, P.C.**
*Attorneys for the Appellant*
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556
    By:    Daniel L. McAuliffe, Esq.,
            Jeffrey A. Wurst, Esq., Of Counsel

**Drinker Biddle & Reath LLP**
*Attorneys for the Appellee Bank of New York Mellon Trust, N.A.*
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
*and*
140 Broadway
39th Floor
New York, NY 10005-1116
    By:    Gordon B. Nash, Jr., Esq.,
            David S. Almeida, Esq.,
            Janice B. Grubin, Esq., Of Counsel

**Foley & Lardner, LLP**
*Attorneys for the Appellee Aztex Associates, L.P.*
90 Park Avenue
41st Floor
New York, NY 10016
    By:    Michael P. Richman, Esq., Of Counsel

**Windels Marx Lane & Mittendorf, LLP**
*Attorneys for the Debtor Malese 18 Corp.*
156 West 56th Street
New York, NY 10019
    By:    Alan Nisselson, Esq., Of Counsel

**Brauner, Baron, Rosenzweig & Klein, LLP**
*Attorneys for the Debtor Malese 18 Corp.*
61 Broadway
18th Floor
New York, NY 10006
    By:    Leslie S. Barr, Esq., Of Counsel

**Office of the United States Trustee**
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437
    By:    Diana G. Adams, Esq., Of Counsel

**SPATT, District Judge.**

In this bankruptcy appeal, Appellant RM 18 Corp. ("RM 18") challenges an order entered by United States Bankruptcy Judge Dorothy T. Eisenberg on April 16, 2009. That order was the result of a remand from this Court on appeal of a previous order on the same issue, entered by Judge Eisenberg on June 28, 2005. The appeal is opposed by Appellees Aztex Associates, L.P. ("Aztex") and Bank of New York Mellon Trust, N.A. ("New York Mellon"). For the reasons set forth below, the Court dismisses the appeal as moot.

**I. BACKGROUND**

This proceeding arises out of the bankruptcy filing by Kmart Corporation on January 22, 2002 in the Bankruptcy Court for the Northern District of Illinois. The Court provides a brief summary of the relevant background facts below, but additional specifics of the case are set forth in greater detail in the Court's previous order in this matter, In re Malease 14FK Corp., 351 B.R. 34 (E.D.N.Y. 2006). Familiarity with those facts is presumed.

Lawrence Kadish and Howard Kadish formed debtor Malese 18 Corp. ("Malese 18") and appellant RM 18 in the early 1980's. They created the entities to participate in a complex real estate transaction with Kmart that was apparently engineered to provide Kmart certain tax benefits. Pursuant to this transaction, Malese 18 received its only asset: the right to collect rent from Kmart for eighteen of its stores. However, Malese 18 did not own the eighteen stores, but rather itself leased them from Appellee Aztex. Aztex was similarly involved in the transaction, and held a 25-year estate in the properties, subject to mortgage liens on the properties. These liens were held by a trust that is now managed by Appellee New York Mellon. The remainder interest in the eighteen properties was contracted to pass to RM 18, Malese 18's sister company, on January 1, 2010. At that time, RM 18 would also assume the obligations of the properties' mortgages.

Because the store leases to Kmart were Malese 18's only assets, Kmart's bankruptcy directly threatened Malese 18's solvency. Thus, two days after Kmart filed for bankruptcy on January 22, 2002, Malese 18 filed for bankruptcy in the Eastern District of New York. That case was assigned to Bankruptcy Judge

Dorothy T. Eisenberg. Malese 18 emerged from bankruptcy shortly after filing, pursuant to a stipulation with Aztex that was approved on July 1, 2002 (the "Malese Stipulation"). The Malese Stipulation provided that Malese 18 would transfer all of its stock to the beneficial ownership of Aztex, and Aztex would assume the right and responsibility to pursue all of Malese 18's claims against Kmart. The upshot for Lawrence and Howard Kadish, the owners of Malese 18 and RM 18, was that any recovery on the Kmart claims would be used in part to pay the mortgage debt encumbering the eighteen properties. As RM 18 was still slated to take possession of these properties on January 1, 2010, this was a significant benefit to the Kadishes.

Presumably to protect the Kadishes' interest, the Malese Stipulation provided that Aztex could not settle the claim against Kmart "without the prior consent of [Lawrence] Kadish, which consent shall not be unreasonably withheld or delayed." (Malese Stipulation, ¶ 5.) Sometime in the spring of 2005, Aztex and New York Mellon came to terms with Kmart on the claim, and agreed to accept approximately $17 million in stock from Kmart to extinguish the claim. However, Kadish refused to consent to the settlement, asserting that the claim was worth much more. Therefore, on June 3, 2005, Aztex moved the Bankruptcy Court for the Eastern District of New York to reopen the Malese 18 bankruptcy, and to rule that Kadish was unreasonably withholding his consent. On June 28, 2005, Judge Eisenberg granted this motion in its entirety. With Judge Eisenberg's order in hand, Aztex and New York Mellon presented the proposed $17 million settlement to Kmart's bankruptcy judge, who approved it on July 11, 2005 (the "Kmart

4

Settlement"). RM 18 and the Kadishes did not move to stay either Judge Eisenberg's order or the Kmart Settlement.

The substance of the parties' disagreement on the value of the Kmart claim is described in detail in the Court's previous decision. In re Malease 14FK Corp., 351 B.R. at 38–39. In sum, Kadish argued that certain rent, called "Deferred Rent" and valued at approximately $30 million, was due and owing to Malese 18 before Kmart filed for bankruptcy. Aztex believed this rent did not become due and owing until after the bankruptcy filing. This was relevant because the Bankruptcy Code allows creditors to make claims for the full value of back rent, but imposes a 15% recovery cap on claims for rent owed after a bankruptcy petition is filed. "Deferred Rent" under the Kmart leases did not fit neatly into either of these categories. The leases provided that the Deferred Rent accrued prior to Kmart's bankruptcy, but no Deferred Rent had been paid and it was not obvious it could become payable without a lease termination.

In her June 28, 2005 decision, Judge Eisenberg held that the Deferred Rent was subject to the 15% recovery cap as a matter of law, and that Kadish's basis for withholding consent was therefore unreasonable. Although RM 18 sought no stay of this order, it did file an appeal. On September 26, 2006, this Court issued a decision, In re Malease 14FK Corp., 351 B.R. at 34, reversing Judge Eisenberg's characterization of the Deferred Rent, and holding that it was *not* subject to the 15% recovery cap. The Court also found that Kadish had a legitimate, non-arbitrary business reason for withholding its consent to the settlement. However, the Court stated that it could not determine whether Kadish had reasonably withheld his

5

consent without also considering the underlying reasonableness of the Kmart Settlement. As the Bankruptcy Court had not analyzed the reasonableness of the Kmart Settlement, this Court remanded the matter to Judge Eisenberg for further proceedings to develop this record.

On February 3, 2009, Judge Eisenberg held a hearing on the reasonableness of the Kmart Settlement. In her decision on April 16, 2009, In re Malese 18 Corp., No. 8-02-80586-478, Slip Copy, 2009 WL 1044556, * 8 (Bkrtcy. E.D.N.Y. April 16, 2009), she found that the Kmart Settlement was reasonable, and that Kadish had unreasonably withheld his consent. At the time of the February 3, 2009 hearing, at least four payments of Kmart stock had already been made to Aztex and/or New York Mellon pursuant to the Kmart Settlement. Therefore, Judge Eisenberg also stated that "[i]t would appear that this proceeding may be moot as it is uncertain whether the parties can be restored to the same positions they were in respectively at the time Aztex and Kmart negotiated the Kmart Settlement." Id., 2009 WL 1044556 at * 8.

RM 18 now appeals from Judge Eisenberg's April 16, 2009 decision. Aztex and New York Mellon oppose the RM 18 appeal on the merits, as well as on the basis of mootness. Finding that the present appeal has been rendered moot, the Court dismisses the present appeal without addressing its merits.

## II. DISCUSSION

**A. Mootness Standard in Bankruptcy Appeals**

Federal courts may not entertain petitions for which no remedy may be fashioned. In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993) (hereinafter

6

"Chateaugay I"). Similarly, federal courts may not consider petitions for which any possible remedy would be inequitable. Id. These two concepts are referred to respectively as constitutional mootness and equitable mootness, and in the Second Circuit, they are usually analyzed in tandem. See In re Chateaugay Corp., 10 F.3d 944, 952 (2d Cir. 1993) (hereinafter "Chateaugay II") ("[Equitable and constitutional mootness] concerns often cannot be addressed separately; they are interactive, as the finality rule limits the remedies a court can offer." (internal quotations omitted)). In the bankruptcy context, the appeal of an order is presumed moot when, pending a final appellate decision, there is either (1) "substantial consummation" of the debtor's reorganization plan, or (2) a "comprehensive change in circumstances" relative to the challenged order. Id.; Chateaugay I, 988 F.2d at 325; In re Adelphia Comm. Corp., 222 Fed.Appx. 7, 8 (2d Cir. 2006).

Nevertheless, the presumption of mootness may be rebutted. In both cases of substantial consummation and a comprehensive change in circumstances, an appellant may avoid mootness on appeal by showing that *all* of the following factors are met:

> (a) the court can still order some effective relief,
>
> (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity,
>
> (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court,
>
> (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings, and

7

> (e) the appellant pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

Chateaugay II, 10 F.3d at 952 (internal citations and quotations omitted; alterations in original) (hereinafter, the "Chateaugay II factors"); see, also, Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888–89 (S.D.N.Y. 1994) (Sotomayor, J.) (applying the Chateaugay II factors when there had been a substantial change in circumstances); In re Global Vision Products, Inc., Nos. 07-cv-12628 (RDD), 09-cv-374 (BSJ), Slip Copy, 2009 WL 2170253, *4 (S.D.N.Y. July 14, 2009) (same).

In addition, both with respect to these five factors as well as in isolation, the Second Circuit has held that a party's failure to seek a stay of a bankruptcy order on appeal weighs heavily in favor of finding equitable mootness. See In re Metromedia Fiber Network, Inc., 416 F.3d 136, 145 (2d Cir. 2005) (citing In re U.S. Airways Group Inc., 369 F.3d 806, 810 (4th Cir. 2004) for the proposition that failure to seek a stay or expedited appeal "weighs strongly in favor of a finding of equitable mootness"); Chateaugay I, 988 F.2d at 326 ("The party who appeals without seeking to avail himself of [a stay] does so at his own risk.").

**B. Application of the Standard**

Here, RM 18 maintains that the present appeal is still viable, while the appellees argue that the Court's inability to fashion equitable relief renders the appeal moot. As a preliminary matter, the Court considers mootness here only in the context of a comprehensive change in circumstances. The substantial consummation analysis does not plainly apply here, as Malese 18's plan of

reorganization was substantially consummated long before Judge Eisenberg made the decision presently on appeal. As it cannot be the case that a presumption of mootness applied before the original decision was even made, the Court does not apply these factors here. Arguably, the substantial consummation of the Kmart bankruptcy could affect the Court's analysis, but none of the parties has presented evidence on this issue, and the Court therefore has no basis to address it. Thus, consistent with the law as described above, the Court first considers whether a presumption of mootness should apply based on changed circumstances, and then assesses whether this presumption has been rebutted.

Here, the Kmart Settlement was consummated in 2005, and, pursuant to it and uninhibited by any stay, Kmart has made significant distributions of stock to Aztex. In turn, Aztex has liquidated this stock in the market. The appellees maintain that this is a comprehensive change in circumstances, and that this gives rise to a presumption that the present appeal is moot. RM 18 admits that, as a result of the stock payments from Kmart, "the parties may not be able to be restored to their original positions," (RM 18's Brief at 21–22), and that "it is unclear whether [RM 18] may continue to have rights within the Kmart Bankruptcy." (RM 18's Reply at 9.)

In light of the relevant evidence, the Court finds that there has been a comprehensive change in circumstances after Judge Eisenberg's original ruling on June 28, 2005, nearly five years ago. When that order was entered, a multi-million dollar claim against Kmart remained pending. After that time, the claim was settled and extinguished. Also, since that time, Kmart has made significant deliveries of

9

securities to Aztex and/or New York Mellon. In turn, the appellees have liquidated all of these distributions in the market. In the Court's view, this is a comprehensive change in circumstances giving rise to a presumption of mootness. The Court therefore applies the five-factor test from Chateaugay II to analyze whether the appeal should nevertheless proceed.

In analyzing this issue, the Court applies the Chateaugay II factors both to the Malese 18 bankruptcy proceeding as well as the Kmart proceeding. Granting the present appeal would undermine the legitimacy of the Kmart Settlement, and the effects of this necessarily weigh on the Court's consideration of equitable mootness. In fact, in the Court's view, the crux of the issue is not whether this Court could fashion equitable relief, but whether the Kmart bankruptcy court could equitably return the parties to their pre-settlement position.

Thus, the first factor the Court considers is whether effective relief can still be ordered by both this Court and the Kmart court. Preliminarily, the Court is confident that it could reverse Judge Eisenberg's April 16, 2009 order without upsetting the parties' positions with respect to the Malese 18 bankruptcy. However, if this were done, the Kmart Settlement would also need to be unwound, and there is no definitive answer as to whether that can be done equitably. The parties have presented little evidence of Kmart's current financial condition, and few details of the stock payments made to Aztex. It is therefore not even obvious what must be unwound.

Nevertheless, the Court is skeptical that it could overturn Judge Eisenberg's decision without creating significant inequities in relation to the Kmart Settlement.

If the Kmart Settlement were annulled, the first order of business would be that the appellants return the distributions made to them by Kmart. This alone presents a significant challenge, as the distributed stock has already been liquidated. To be sure, a court could order the appellants to repurchase the stock in the marketplace, but this would not solve the problem. The stock is almost certainly trading today at a different price than when it was distributed, and therefore would be either more or less expensive to repurchase compared to its value at distribution. Similarly, if the appellees were instead ordered to return to Kmart the cash value of the stock distributions, Kmart's position would change by the involuntarily swap of equity for cash. The appellees' position would also change under this solution, because the liquidation price for the stock was likely not identical to its price at distribution. The appellees would therefore either receive a windfall if the liquidation price exceeded the distribution price, or experience a shortfall if it was the opposite.

The Court notes that RM 18 does not address any of these issues in its papers. As it is the appellant's burden to show that the Chateaugay II factors have been met, the Court finds that the appellant has not carried its burden with respect to this first factor.

The second and third factors, whether the relief would affect Malese 18's or Kmart's reemergence from bankruptcy, and whether the relief would upset the entirety of either bankruptcy proceeding, appear to be satisfied. Neither bankruptcy is threatened in its entirety by the present appeal.

The fourth factor is whether third parties adversely affected by the proposed relief have been given notice of the appeal and an opportunity to participate. Here,

the obviously affected third-party is Kmart, because it could face a reinstated multi-million dollar claim. The appellees assert in their opposition papers that the appellant did not inform Kmart of the appeal, and that Kmart was given no opportunity to participate in the proceeding. The appellant does not deny this. Thus, the appellant has failed to meet its burden with respect to this fourth factor.

The fifth and final factor, likely the most important consideration here, is whether the appellant diligently pursued a stay of proceedings pending appeal. This factor plainly weighs against the appellant. The Second Circuit has instructed that a failure to seek a stay militates in favor of mootness, in part because the Bankruptcy Code expressly places the power to seek a stay in the hands of appellants. Chateaugay I, 988 F.2d at 326. An appellant abdicates this power "at his own risk." Id. Here, RM 18 was aware that the proposed Kmart settlement relied on stock distributions, and that inevitably it would be difficult to unwind. Nevertheless, RM 18 never sought a stay in either the Malese 18 bankruptcy or the Kmart bankruptcy. The Court thus finds that this failure demonstrates a lack of diligence, and that the appellant has not carried its burden on this factor.

Once a presumption of mootness applies, the appellant has the burden to show that each of the Chateaugay II factors has been met. Here, the presumption does apply, and the appellant has failed to carry its burden with regard to three of these factors. Therefore, the Court finds that the present appeal is moot.

RM 18 nevertheless argues that its appeal is not mooted because, even if the Kmart Settlement cannot be equitably unwound, it seeks to prosecute claims against Aztex and New York Mellon that rely on the substantive issues before the Court.

That is, RM 18 reasons that a "determination of whether [Kadish] was reasonable in withholding [his] consent to the Kmart Settlement is necessary in order for [RM 18] to reinstate [an action against the appellees in tort and contract]." (RM 18's Brief at 22.)

The Court finds that this argument is not a basis for avoiding mootness, but rather a request for an advisory opinion on RM 18's claims against Aztex and New York Mellon. The Court "decline[s] the invitation" to offer such an opinion. Chateaugay I, 988 F.2d at 327 (finding an appeal moot despite the fact that issues before the court may have formed the basis for other legal actions). Moreover, the Court points out that because this appeal is not denied on its merits, the issue preclusion effects of the Bankruptcy Court's orders are limited. See, e.g., Algonquin Power Income Fund v. Christine Falls of New York, Inc., Slip Copy, 2010 WL 177244, *3 (2d Cir. January 20, 2010) ("the Restatement of Judgments § 28, which sets out five separate grounds for avoiding issue preclusion, lists as the first ground the rule that '[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.'").

In addition, the Court seeks to clarify an aspect of its previous order in this case. In its previous order, the Court did not intend to imply that the reasonableness of Kadish's withholding of consent rested *solely* on whether the proposed Kmart settlement was reasonable. To be sure, this is an important factor to consider in the analysis, and one that the Bankruptcy Court is best suited to evaluate. However, it is not necessarily the case that, if the proposed Kmart settlement exceeded the lowest point in the range of reasonableness, then Kadish was contractually bound to

accept it. Kadish was not obliged to accept a settlement solely because it was reasonable; rather, he agreed not to act unreasonably in rejecting a proposed settlement. As long as Kadish acted in good faith, had a legitimate business purpose, and had an objectively reasonable basis to believe a significantly better settlement could be reached, his rejection *may* have been reasonable. This is notwithstanding the fact that the settlement itself may also have been objectively reasonable. In short, reasonable minds may differ.

The Court adds this comment in light of the fact that its previous order may not have plainly expressed this principle. Obviously, because the Court dismisses the present appeal as moot, the Court does not rule on the reasonableness of Kadish's rejection of the settlement.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the present appeal is dismissed as moot; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
March 9, 2010

　　　　　　　　　　　　　　　　　　　　__/s/ Arthur D. Spatt_____
　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　United States District Judge